UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| C.N., on her own behalf and by and through her Parent and Natural Guardian, J.N.,<br><br>     Plaintiffs,<br><br>v.<br><br>Willmar Public Schools, Independent School District # 347, Michael Carlson, Chair, Willmar Board of Education, in his representative capacity, Kathryn Leedom, Superintendent, in her personal and representative capacities, Susan Smith, Supervisor of Special Education, in her personal and representative capacities, Rebecca Simenson, Principal, in her personal and representative capacities, and Lisa Vander Heiden, in her personal and representative capacities.<br><br>     Defendants. | Civil File No. 07-4774(DSD/JJG)<br>**DEFENDANT VAN DER HEIDEN'S MEMORANDUM IN SUPPORT OF MOTION FOR DISMISSAL** |

## INTRODUCTION

Lisa Van Der Heiden brings this motion to dismiss the claims against her pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6). This memorandum consists of a brief statement of facts taken from Plaintiffs' Complaint[1], followed by legal issues and analysis and a conclusion.

## STATEMENT OF FACTS

C.N. was a student in the Willmar Public Schools ("District") from preschool until November of 2006 when her mother withdrew her from the District.

---

[1] Defendant Van Der Heiden uses the facts alleged in Plaintiffs' Complaint for purposes of this motion but does not admit the facts or the legal conclusions drawn there.

(Plaintiffs' Complaint ¶¶22, 61) C.N. was born on March 10, 1998 and was nine years old when the Complaint was filed. (Plaintiffs' Complaint ¶ 9) She currently lives in and attends school in the Atwater Cosmos Grove City School District. (Plaintiffs' Complaint ¶¶ 9, 10, 24*)*

While C.N. was a student in the District, she was eligible for special education services under several categories, the most recent being Specific Learning Disability and Speech and Language Impairment. (Plaintiffs' Complaint ¶ 9*)*

**Kindergarten 2003-2004.**  C.N. attended the District's Jefferson Kindergarten (Plaintiffs' Complaint ¶ 17, 29). In kindergarten, C.N. exhibited some behaviors such as spitting, running from staff, hitting and biting self and others, tantrums, that disrupted the classroom and likely impacted her learning.(*See* Plaintiffs' Complaint ¶ 31) The District brought in Tim Ardoff from Southern Minnesota Community Support Services to conduct a functional behavioral analysis (FBA). (Plaintiffs' Complaint ¶30, 31)

Following the FBA, C.N. was transferred to Lincoln Elementary ("Lincoln"), another District school, with a revised Individual Education Program (IEP) and a behavior intervention plan (BIP) incorporating some of Mr. Ardoff's recommendations. (Plaintiffs' Complaint ¶34) C.N.'s mother J.N. did not dispute the IEP or behavior plan. Plaintiffs' acknowledge that the IEP called for removal to a time out room when C.N. exhibited "one of the target behaviors" and it indicated that a "basket hold" restraint would be used in such situations until C.N. was calm. (Plaintiffs' Complaint ¶¶34, 35; Exhibit 1) J.N. was aware of the use of the basket hold and the time out room as outlined on the IEP but now claims that she was unaware of the extent of their use. (Plaintiffs'

2

Complaint ¶37) She did acknowledge that she had approved of the use of restraint if C.N. was a harm to herself or others. (Plaintiffs' Complaint ¶38)[2]

**First Grade 2004-2005.**  Lisa Van Der Heiden is a teacher who has been employed by the District through out the relevant time period. (Plaintiffs' Complaint ¶11) She continues to teach in the District and has never been disciplined by the District. She was C.N.'s special education teacher in the 2004-2005 school year. (*See* Plaintiffs' Complaint ¶41)

**Second Grade 2005-2006.**  C.N. began second grade in the 2005-2006 school year and she made academic and behavioral progress in her regular education classroom. (Plaintiffs' Complaint ¶47) She received special education services from Ms. Van Der Heiden for reading, math and behavioral support. (*See* Plaintiffs' Complaint ¶47)  The IEP team, including C.N.'s mother, revised the IEP and deleted the goals focused on behavior and Ms. Van Der Heiden recommended that the BIP be discontinued. (Plaintiffs' Complaint ¶49) A behavior plan was incorporated into the IEP. (Plaintiffs' Complaint ¶50)[3]

**Third Grade 2006-2007.**  C.N. began third grade in the 2006-2007 school year at Lincoln. (Plaintiffs' Complaint ¶54) Her mother was informed on August 30, 2006 that a maltreatment report against Ms. Van Der Heiden had been made to the MDE. (*Id.*) Ms. Van Der Heiden was placed on administrative leave during the investigation of this report. (Plaintiffs' Complaint ¶56) Ms. Van Der Heiden returned to school from October

---

[2] Plaintiffs' Complaint states in error that Minnesota law requires that restraint of special needs students occur only where there is a "clear and present immediate threat of danger".(Plaintiffs' Complaint at 40) No such law or rule exists in Minnesota. Instead, regulated procedures like restraint and the use of time out rooms must either be a part of the student's IEP as was the case here, used in an emergency or be part of the school's discipline policy. Minn. R. 3525.2900 subp.5.

[3] MDE has authority to investigate claims of maltreatment that allegedly involved school personnel pursuant to Minn. Stat. §626.556 subp.3b.

2, 2006 to October 6, 2006 after the District had investigated the complaint but was placed on leave again when another complaint was filed. (*See* Plaintiffs' Complaint ¶60) She did not return to school for the remainder of the 2006-2007 school year. She never worked with C.N. again.

In November of 2006,[4] J.N. withdrew C.N. from the District and enrolled her at St. John's Catholic School in Atwater. (Plaintiffs' Complaint ¶ 61, 22, 23) J.N. later enrolled C.N. in the Atwater School District for the 2007-2008 school year. (Plaintiffs' Complaint ¶ 24).

The District hired it's law firm to investigate the allegations that Ms. Van Der Heiden maltreated two students, one of whom was C.N. (Plaintiffs' Complaint ¶78) The investigator determined that Ms. Van Der Heiden had not maltreated the students. (*Id.*)

Plaintiffs requested a due process hearing under the Individuals with Disabilities Education Act (IDEA) on October 17, 2007. (Plaintiffs' Complaint ¶1) At the time that C.N. brought the Complaint, C.N. had been moved to another school district. (Plaintiffs' Complaint ¶2) An administrative law judge held that Plaintiffs' claims under IDEA were moot because C.N. had left the school district before filing her request for hearing. (Plaintiffs' Complaint ¶ 4, 84)

## LEGAL ISSUES AND ANALYSIS

### I.   Standard of Review

The United States Supreme Court has recently revisited the standard for dismissal pursuant to Rule 12 (b) (6) in *Bell v. Twombly, ---U.S. -----,* 127 S. Ct. 1955, 1964 -1965 (2007). In that decision, the Court overruled the prior standard enunciated in *Conley v. Gibson,* 355 U. S. 41, 47, 78 S.Ct. 99 (1957) that allowed a complaint to survive a

---

[4] On information and belief , J.N. withdrew C.N. in November of 2006. Plaintiffs have not provided the exact date that she was withdrawn.

4

12(b)(6) motion if there was "no set of facts" that would entitle plaintiff to relief. *Bell,* 127 S. Ct. at 1964. The *Bell* Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, (internal citations omitted) a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"),FN3 on the assumption that all the allegations in the complaint are true (even if doubtful in fact)(citations omitted).

*Id.* at 1964.

This Court has applied this standard to claims under the IDEA. "To survive the District's motion to dismiss, plaintiffs must provide something more than a simple statement of facts creating a suspicion of a legally cognizable right of action. (internal quotations and citation omitted). They must make factual allegations which, when taken as true, are sufficient to 'raise a right to relief above the speculative level.' " *Strock v. Indep. Sch. Dist. 281,* Slip Copy 2008 WL 782346 (D.Minn. 2008).

 In this case, Plaintiffs have not met this threshold in their pleadings. A careful review of Plaintiffs' Complaint indicates that in essence premise their numerous claims on two factual allegations. First, they claim that although C.N.'s IEP called for restraint and J.N. was aware of and never contested the IEP, she did not agree with the frequency of the restraints (Plaintiffs' Complaint ¶37, 38, 40). These claims stem entirely from alleged failures under the IDEA for which Ms. Van Der Heiden as an individual may not be held liable.

Second, Plaintiffs take a "shot gun" approach to claims ranging from intentional infliction of emotional distress, constitutional claims, discrimination, to breach of

fiduciary duty[5] apparently basing those claims on their averments that Ms. Van Der Heiden did things like "scare" students or "talk negatively" to them. (Plaintiffs Complaint ¶66) These claims of "abusive conduct" will be referred to as such for brevity in this claim. These are claims that Ms. Van Der Heiden adamantly denies and we are confident that Plaintiff can not prove.

In fact, Plaintiffs acknowledge that their allegations are speculative. (Plaintiffs' Complaint ¶65, 66) Their Complaint is totally lacking in any specific facts that would support these allegations. No dates or time periods for the allegations of "scaring" children, or "talking negatively" about their disabilities are provided. No assertion of what occurred, where it occurred or any other specific facts that might move the allegations beyond a level of speculation. Plaintiffs have failed to state claims upon which relief may be granted and their Complaint should be dismissed.

In considering a motion to dismiss, this Court may consider materials that are referenced in the Complaint. "When considering a motion to dismiss under Rule 12 (b)(6), the court must generally ignore materials outside the pleadings, but it may consider materials that do not contradict the complaint. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999) The Court may consider materials that are 'necessarily embraced by the pleadings.'" *R.P. ex rel. K.P. v. Springdale Sch. Dist.,* Slip copy, 2007 WL 552117 (W.D.Ark. 2007) Plaintiffs' Complaint is insufficient as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

## II.   Plaintiffs' Claims under IDEA must be Dismissed

### A. Claims Against Individuals Fail

Plaintiffs can not state a claim under the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. §1401 *et seq.* against Ms. Van Der Heiden as an individual. All of the remedies available under IDEA are "recoverable from the school district, not from any of the individual defendants." *Bradley v. Arkansas Dept. of Educ.,* 301 F.3d 952, 957 n.6 (8th Cir. 2002) The IDEA requires a *school district* that accepts federal funds to provide children with disabilities within its jurisdiction a free

---

[5] No Minnesota Court has held that a claim for breach of fiduciary duty exists and Plaintiffs cite no authority for this claim. It is a claim for educational malpractice at its core and such claims are not recognized in Minnesota. *Hoekstra v. Indep. Sch. Dist. No. 283,* 103 F.3d 624 (1996) This claim must be dismissed as a result.

6

appropriate public education (FAPE). 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1)(A). To provide a FAPE, a *school* must formulate an IEP tailored to the unique needs of the student with disabilities. 20 U.S.C. § 1412(a).  IDEA was promulgated to ensure that *school districts* provide children with disabilities with an appropriate education. *See Board of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley,* 458 U.S. 176, 206-07 (1982). IDEA applies only to school districts as local education agencies and to the state education agency. [6]  The IDEA does not permit an award of any monetary relief against an individual school official. *Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 30 (1stCir. 2006) *citing Bradley. 301 F.3d  at 357 n.6.* "That only the public agency is liable for reimbursement follows natural from the fact that Congress assigned to the agency the ultimate responsibility for ensuring FAPE." *Diaz-Fonseca,* 451 F.3d at 35.  The claims under the IDEA against Ms. Van Der Heiden in her individual capacity must be dismissed as a matter of law.

**B.  Claims against "Official" Fail**

Additionally, claims against Ms. Van Der Heiden in her "official capacity" as a teacher are "subject to dismissal because they are redundant to [the] claims against the District."  *See R.P. ex rel. K.P. v. Springdale Sch. Dist.,* Slip copy, 2007 WL 552117(W.D.Ark. 2007); *Artis v. Francis Howell North Band Booster Ass'n. Inc. ,* 161 F.3d 1178, 1182 (8th Cir. 1998) "…[C]laims against the Individual Defendants in their official capacities will be dismissed because they are redundant to their claims against the District." *A.C., ex rel. M.C. v. Indep.. Sch. Dist. No. 152*, 2007 WL 1544507 (D.Minn.2007); *J.R. ex rel. W.R. v. Sylvan Union Sch. Dist.,* Slip Copy 2008 WL 682595 at 13 (E.D. Cal 2008) *citing  Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.... It is not a suit against the official personally, for the real party in interest is the entity"); *see also, Monell v. Department of Social Services,* 436 U.S. 658, 691, n. 55, 98 S.Ct. 2018, 2036, n. 55, 56 L.Ed.2d 611 (1978) ("local

---

[6] 20 U.S.C. 1412(a) provides that a state is eligible for assistance under IDEA if it provides assurance to the Secretary of the Federal Department of Education that the state has complied with the requirements of IDEA. A local education agency, such as the Willmar Public Schools, is eligible for assistance under IDEA if it provides a similar plan to the state. *See* 20 U.S.C.§1413(a).

government officials sued in their official capacities are 'persons' under § 1983 in those cases in which ... a local government would be suable in its own name"). "In his official capacity, [a superintendent] is a redundant and, therefore, unnecessary party. Fed.R.Civ.P. 19(a)". *Id*   Plaintiffs' claims against Ms. Van Der Heiden as a teacher must be dismissed as redundant to claims made against the District.

Plaintiffs have failed to state a claim under which relief may be granted because IDEA claims against an individual in her personal or official capacity are redundant as claims against the District.  Importantly, this cause of action must also be dismissed because Ms. Van Der Heiden is entitled to qualified immunity from suit because no cause of action against her may lie under IDEA. *Bradley* 301 F.3d at 955.[7]

**C.  Claims are Moot**

Even if a claim for relief could survive against Ms. Van Der Heiden in her capacity as a teacher, C.N.'s claims under IDEA are moot for failure to raise them at the time that she attended the Willmar Public Schools.  It is well settled law that claims under the IDEA must be dismissed on the merits as moot when the student leaves the school district before she gives a district notice through the filing of a due process hearing request. "Challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing." *M.M., by L.R. v. Spec. Sch. Dist. No. 1,* 512 F.3d 455 (8th Cir. 2008)(*citing Thompson v. Bd. of Spec. Sch. Dist. No.1,* 144 F.3d 574, 578-579(8th Cir. 1998) (*string cites omitted*). In this case, there is no dispute that at the time she filed a request for a due process hearing, C.N. was enrolled in another public school district. (Plaintiffs' Complaint ¶2)[8] As the Eighth Circuit state in *Thompson*, " [t]he purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the district receives notice, it has the opportunity to address the alleged problem." *Id.* at 460-461.

---

[7] Rather than discuss the application of qualified or official immunity under each of plaintiffs' claims against Ms. Van Der Heiden, we note the application and then discuss the immunity from suit at the conclusion of this memorandum.

[8] C.N. was first enrolled in a private school in the neighboring school district of Atwater in third grade for most of third grade, the 2006-2007 school year (Plaintiffs' Complaint ¶ 22, 23). She was then enrolled in the Atwater District in the 2007-2008 school year. (Plaintiffs' Complaint ¶17)

Plaintiffs have asserted not only that the *Thompson* line of cases should not apply, but that their failure to give the District notice should be excused under 20 U.S.C. §1412(a)(10)(B)(iv)(1)(*sic*). (Plaintiffs' Complaint ¶3) It seems plaintiffs may be arguing that 20 U.S.C. §1412 (a)(10)(C)(ii) allows them to seek recovery for private school tuition if the District did not offer a FAPE in a timely fashion. This argument also fails because IDEA requires that parents provide notice in this situation also – they must notify the District of their disagreement with the proposed IEP *and* their intent to enroll the student in the private school either in an IEP meeting or in writing at least ten days before they remove the student. 20 U.S.C. §1412(a)(10(C)(iii)(I). Plaintiffs did not comply with the notice requirements under well-established law in the Eighth Circuit or that required under IDEA. Their claims must be dismissed on the merits as a result.[9]

### III. Section 504 Claims and MHRA Claims Fail

### A. Section 504

*1. Generally*

Section 504 of the Rehabilitation Act prohibits the denial of benefits or services to a qualified person with a disability on the basis of that disability. *See* 29 U.S.C.§ 794(a) The Eighth Circuit has held that Section 504, the Americans with Disabilities Act and the Minnesota Human Rights Act (MHRA), Minn. Stat. §363.01 *et seq.*, provide essentially the same protection and have the same enforcement mechanisms. *See Wojewski v. Rapid City Regional Hospital Inc.,* 450 F.3d 338, 345 (8th Cir. 2006); *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998); *Roberts by and Through Rodenberg-Roberts v. KinderCare Learning Centers, Inc.,* 86 F.3d 844, 846 n.2 (8th Cir. 1996)(There is no distinction in the analysis of an ADA or MHRA claim in the context of educational for children with disabilities)

In the context of the provision of educational services for children with disabilities, a showing of "gross misjudgment or bad faith" is necessary under Section 504, the ADA or the MHRA. *See Hoekstra v. ISD No. 283,* 103 F.3d 624,627 (8th Cir. 1996); *M.P. v. Indep. Sch. Dist. No. 721,* 439 F.3d 865, 867 (8th Cir.2006); *AP by his*

---

[9] IDEA contains a two year statute of limitations. 20 U.S.C. §1415(b)(6). Plaintiffs have asserted facts beginning in the 2003-2004 school year through unspecified date in November of 2007. In the unlikely event that claims under IDEA are permitted to proceed, claims before November 5, 2005 are barred by the statute of limitations.

9

*parents and legal guardians, Dave and Julia Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11,* 538 F.Supp.1125 (D. Minn. 2008)(standard applies to education services but deliberate indifference may apply to reasonable accommodations requirement in other contexts such as child care).

Plaintiffs have not pled sufficient facts to show that gross misjudgment or bad faith may underlie the educational decisions made. The gravamen of plaintiffs' claims is that C.N. was restrained at school. There is no dispute that C.N.'s IEP called for restraint and use of a time out. Plaintiffs admit that J.N. agreed that C.N. required restraint at time because of her behavior. Plaintiffs admit that the daily communication notebook that went home with C.N. every day indicated the times that she was restrained. Plaintiffs now claim that C.N. was restrained too often or using a "basket hold" instead of a "prone hold". They provide no dates or times or any other facts that would support their claim. They allege that other students were subjected to restraint but offer no explanation of whether those children had IEP's that called for restraint, no evidence of a custom or practice or policy can be established on these mere assertions. Failing a showing that it is plausible that Plaintiffs can prove bad faith or gross misjudgment, the individual defendants including Ms. Van Der Heiden, are entitled to qualified immunity. *See Heidemann v. Rother,* 84 F.3d 1021, 1032(8th Cir. 1996) (Educators using professional judgment that is not a "gross" departure from accepted standards are entitled to immunity.*)*

C.N. may argue that her allegations that Ms. Van Der Heiden acted in an "abusive way" toward her create a plausible argument that a claim under Section 504 exists. The mere assertion that Ms. Van Der Heiden required C.N. to sit in a specific position for example is insufficient. There is no information as to when this allegedly occurred, why it occurred, how long it occurred, whether it resulted in harm or whether it was among the generally accepted methods of assisting a student with their behavior or class work.

*2. Individual or Official not Proper Party*

Even if Plaintiffs had pled sufficient facts to make their claims plausible, individual defendants can not be subject to Section 504. Plaintiffs can not assert a viable claim under Section 504 of the Rehabilitation Act against a school official in her individual capacity. *See Alsbrook v. City of Maumelle,* 184 F.3d 999, 1011 (8th Cir. 1999)

10

*cert. dismissed,* 529 U.S. 1001 (2000); *R.P. ex rel. K.P. v. Springdale Sch. Dist.,* Slip copy, 2007 WL 552117 (W.D.Ark. 2007). Claims against Ms. Van Der Heiden in her "official capacity" are also "subject to dismissal because they are redundant to [the] claims against the District." *R.P. ex rel. K.P.,* at 6; *Artis,* 161 F. 3d. 1182. Like IDEA, Section 504 applies to the school district not the individual employee. Claims against Ms. Van Der Heiden in her individual or official capacity should be dismissed as a matter of law.[10] Like the claims under IDEA, Ms. Van Der Heiden is entitled to immunity from a Section 504 suit as well.

   *2. Failure to Exhaust*

In addition, Plaintiffs have failed to exhaust the required administrative remedies before seeking relief in this court and their claims are not of the type that is permitted to proceed without exhaustion. Viable disability discrimination claims can be asserted against a school district either separately or in conjunction with the IDEA. *Moubry v. ISD No 696, Ely, MN,* 9 F.Supp.2d 1086, 1099-1100 (1998); *M.P. v. ISD No. 721, New Prague, Mn.,* 439 F.3d 865 (8th Cir. 2006) *rehearing and rehearing in banc denied; M.Y. v. J.Y v. Spec. Sch. Dist. No. 1,* 519 F.Supp.2d 995, 1001 (D.Minn.2007). "The exhaustion requirement of Section 1415 (f), however, precludes litigants from circumventing the Act's procedural requirements by bringing a related claim under a different Federal statute." *Mobury.* 9 F. Supp. 2nd at 888. The congressional intent behind the [IDEA] included that parties must exhaust administrative remedies before bringing a separate action in federal court where exhaustion would be required under IDEA. *Id.* In this case, plaintiffs did not timely seek a hearing on their Section 504 claims.

The Eighth Circuit has also provided clear direction on when disability discrimination claims may proceed without administrative exhaustion. *M.P. v. ISD No. 72 , New Prague, Mn.,* 439 F.3d 865 (8th Cir. 2006) *rehearing and rehearing in banc denied.* In *M.P.,* the student failed to raise his IDEA claims against the New Prague School District while still a student there. *Id.* at 867. M.P. claimed that he was discriminated against not because of the alleged failures under IDEA regarding the student's behavioral programming and the use of time out and restraint, but instead

---

[10] Punitive damages are not available under either the IDEA or Section 504. *See e.g. Barnes v. Gorman,* 536 US. 181 (2002). However, we reserve these arguments for a later date.

because other students harassed him based on his disability and the District failed to protect him from that conduct. *Id.* In examining the disability discrimination claims, the Court held that:" [t]he School District's alleged failure to protect M.P. from unlawful discrimination on the basis of his disability is a claim that is *wholly unrelated to the IEP process*, which involves individual identification, evaluation, educational placement and free, appropriate education (FAPE) decisions." *Id* (emphasis added).  The clear guidance of the Court is that when the claims of disability discrimination are "wholly unrelated to the IEP process" they may proceed without exhaustion of the IDEA administrative remedies.

 In the case at bar, C.N. claims that her IEP was not implemented as written including that Ms. Van Der Heiden used time out and restraint too frequently. Those claims stem solely from an alleged violation of the IDEA. As a result, Plaintiffs' claims must be dismissed for failure to exhaust their administrative remedies.[11]

## IV.   Section 1983  - Federal Claims and Constitutional Claims
### A. Section 1893 Generally

Plaintiffs assert several constitutional claims including due process, equal protection and right to privacy.  C.N. alleges that Defendants including Lisa Van Der Heiden acted under "color of sate law" when they "seized, restrained, seclusion (*sic*) and confined only disabled students, including C.N….." (Plaintiffs' Complaint ¶113) Plaintiffs assert that Defendants including Ms. Van Der Heiden are being sued in their "…individual capacities because each Defendant acted within their official capacities in the deprivations of students' rights. (*Id.)* Plaintiffs assert that Defendants interfered with or deprived C.N. of her rights under the United States Constitution, IDEA and Section 504. (Plaintiffs' Complaint ¶¶ 114, 115).

Section 1983 of the Civil Rights Act provides a federal cause of action against a person acting under the "color of state law" for alleged deprivations of rights under the

---

[11] Plaintiffs' claims under the MHRA are also time barred. The MHRA requires claims to be filed with one year of the incident. Minn. Stat. §363.06 subd. 3. In this case, Plaintiffs first filing of a claim under the Act occurred with this Complaint dated December 5, 2007. Claims arising before December 5, 2006 are time barred as a result.

Constitution and federal law.[12]  42 U.S.C. §1983. Section 1983 is not a source of substantive rights but instead provides a method for vindicating federal rights established by constitution or federal law elsewhere. *Graham v. Conner, 490 U.S. 386, 393-94 (1989)*. As an initial matter, a Section 1983 claim can not be brought against Ms. Van Der Heiden in her official capacity because to do so would be the same as making a claim against the School District. *Alsbrook,* 184 F.3d 999, 1010.[13]

**B.  IDEA and Section 504 Claims may not form the basis for §1983 Claims**

This Circuit has long recognized that IDEA claims can not form the basis for a Section 1983 claim. "To the extent that Plaintiffs' Section 1983 claims relate to an alleged deprivation of equal access to a public education, these claims are merely an attempt by Plaintiffs to recast their IDEA claims under the guise of Section 1983. As such, these portions of the claims cannot provide a basis for a Section 1983 action." *Larson ex rel. Larson v. Indep. Sch. Dist. No. 361*, 2004 WL 432218, at 16 (D.Minn.)(internal citations omitted); *see also Bradley v. Arkansas Dept. of Ed., 301 F.3d 952, 957 (8th Cir. 2002.)* The rationale is based in large part on the fact that general and punitive damages for the types of injuries alleged in this case, are not available under IDEA. *See Heidemann,* 84 F.3d at 1033.

In *Hoekstra v. Indep. Sch. Dist. No. 283,* the Eighth Circuit examined a claim that a school district discriminated against a student with disabilities when it failed to provide her with an elevator key and failed to provide required tutoring in a timely manner. The Court held that the plaintiff's Section 1983 claims based on IDEA violations could not be pursued. 103 F.3d 634, 635-36 (8th Cir. 1996). In that case, the student had been awarded compensatory education for alleged violations of the IDEA and the school district had provided or offered to provide the educational services. *Id.* at 626. The Complaint requested only damages and the fact that the student had received or been offered the

---

[12] Plaintiffs' allege that C.N.'s rights were abridged under "state and federal law" (Plaintiffs' Complaint ¶115). However, Section 1983 applies only to federal law claims. *Bradley,* 301 F. 3d 952, 957 (8th Cir. 2002); *Ebmeier v. Stump,* 70 F.3d 1012, 1013 (8th Cir.1995); *Doe v. Gooden,* 214 F.3d 952, 955 (8th Cir.2000)(violations of state law do not state a claim under §1983).

[13] The sole exception allows an official to be sued for injunctive relief. *Alsbrook,* 184 F.3d 1010, n.19.  The only injunctive relief requested in the case at bar is pursuant to the Minnesota Government Data Practices Act (MGDPA). (Plaintiffs' Complaint at p. 47) Ms. Van Der Heiden is not named in that count and thus, the exception does not apply to her. (*See* Plaintiffs' Complaint ¶124) Further, claims under the MGDPA may not be brought against individuals. *Larson,* 2004 WL 432218 at 18.

compensatory education services awarded in a due process hearing precluded any possibility of further compensatory education or reimbursement. *Id.* The Court held that given only a claim for damages, the Hoekstras had failed to state a claim under the IDEA and thus, failed to state a claim under Section 1983. *Id.* Similarly, in our case, the only remedies sought are compensatory and punitive damages.[14] Because of the comprehensive enforcement mechanisms available under IDEA, such claims can not provide the basis for a Section 1983 claim again Ms. Van Der Heiden or the other individual defendants.

Claims under Section 504 of the Rehabilitation Act are not cognizable under Section 1983 for essentially the same reasons. *See R.P. ex rel. K.P. v. Springdale Sch. Dist.,* Slip Copy, 2007 WL 552117 (W.D.Ark. 2007); *Alsbrook,* 184 F.3d 999.

**C. Constitutional Claims – Fourth and Fourteenth Amendments**

Plaintiffs' claim that C.N. was unlawfully seized apparently through the use of restraint as discussed in her IEP or the use of the time out room.[15] The Fourth Amendment to the United States Constitution protects individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. To establish a Fourth Amendment violation through a Section 1983 action, the plaintiff must show that a seizure occurred and that it was unreasonable. *Hawkins v. City of Farmington,* 189 F.3d 695, 702 (8th Cir. 1999). Whether the seizure is "reasonable" is judged by the totality of the circumstances. *McCoy v. City of Monticello,* 342 F.3d 842, 846 (8th Cir. 2003) While the Fourth Amendment applies to students in school settings, the Eighth Circuit in *Heidemann* has held that in the context of public school education, it is to be judged under the standard of whether the defendant's conduct was such a substantial departure from accepted professional judgment as to demonstrate that the defendants did not base their actions on professional judgment. *Heidemann,* 84 F.3d at 1029.

---

[14] It appears that Plaintiffs claim for compensatory damages including "non-economic damages for humiliation etc." (Plaintiffs' Complaint, page 47) might be for reimbursement of some sort but it is unclear from the relief requested. Even so, the types of injuries claimed are not those that are remedied by IDEA.

[15] It can't be too often noted that the Complaint does not tell us which year these alleged violations occurred, where they occurred or what damage they purportedly caused. Contrast theses allegations with the undisputed fact that in the third grade, the 2006-2007 school year, just before the student was withdrawn, the IEP team deleted behavior goals for the student evidencing that she had made significant progress in this area. Plaintiffs also admit that C.N. made academic progress while receiving special education services from Ms. Van Der Heiden.

14

The *Heidemann* case is instructive in this matter. There a school district used a "blanket wrapping" technique as part of the services for a student with disabilities. *Id.* It had been recommended by a physical therapist that contracted with the school. The plaintiff's experts testified it was not a widely used practice and one testified that it would be a restraint if done tightly enough and therefore, outside the scope of its appropriate use. *Id.* at 1031 n.6. The Eight Circuit held that despite this evidence it was insufficient to create a genuine issue of fact on summary judgment and the individual defendant was entitled to qualified immunity as a matter of law. *Id.* at 1031. The Court held:

> Accordingly, we hold that, when an authorized professional acting under color of state law exercises professional judgment in treating a disabled individual under the state's care, and that exercise of judgment would otherwise cause unconstitutional bodily restraint, he or she is entitled to qualified immunity if such treatment is within the scope of professionally acceptable choices, which, for purposes of judicial review, is broadly defined to include any choice that is not a substantial departure from accepted professional judgment, practice or standards.

*Id.*

In the case at bar, Plaintiffs argue that restraint and time out for C.N. were used more than they would have liked in hindsight. They do not allege that the use of these techniques where a gross departure from the professionally accepted standards.

In fact, Minnesota Rules provide for the use of restraint and seclusion for students with special needs. *See* Minn. R. 3525. 2900. Clearly, the use of such interventions in and of themselves can not be a "substantial departure from accepted professional standards" when the Minnesota Department of Education has included their use in is rules regarding behavior interventions. Plaintiffs must plead some facts that suggest that Ms. Van Der Heiden's use of these educational techniques were a gross departure from professionally accepted methods and they have not done so. The facts in *Heidemann* differ only slightly from those at bar in that in that case the school was implementing the recommendation of an outside contractor that it employed. In our case, the school district had implemented some of Mr. Ardoff's recommendation but not all of them. It was not required to implement all of the recommendations of course.

This case also differs significantly from *A.C. v. Indep. Sch. Dist. No. 152,* 2007 WL 1544507(D.Minn.) In that case, the record contained evidence that a student was secluded in a small room allegedly for the majority of his school day. *Id.* at 5. Here Plaintiffs have asserted no facts that indicate that C.N. was restrained or in time out for any periods of time not required by her IEP or reported to her mother in the daily log.

Plaintiffs will argue that they have asserted that Ms. Van Der Heiden was "abusive" toward C.N. Again, they provide nothing more than the assertion that such conduct may have occurred at some time. But without any context or specificity, these claims can not survive the test set out in *Bell v. Twombly*.

Plaintiffs' claim violations under the Fourteenth Amendment to the United States Constitution which are not well defined. The Fourteenth Amendment provides that no State shall deprive a person of life, liberty or property without due process of law. *U.S. Const. Amend. XIV.* [16] C.N. seems to be indicating that she did not receive equal protection of the law apparently because of the restraints used at some time during her five years of education. The Complaint provides no facts that suggest this theory is plausible, instead, it is filled with conclusions and a partial recitation of the elements of a due process or equal protection claim. Plaintiffs' equal protection claims are supported only by the mere allegation that no other non-disabled student was subjected to seizure or restraint. These statements simply do not provide specific facts sufficient to survive a motion to dismiss.

## VI. State Law Complaints

### A. Supplemental Jurisdiction

In addition to the federal civil rights claims, Plaintiff alleges several state common law claims. After dismissing jurisdiction-conferring claims, a federal district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case

---

[16] Plaintiffs also claim unreasonable seizure, false imprisonment and negligent confinement in Count Ten of their Complaint. These claims stem from the same two core allegations; (1) that Defendants did not implement the IEP or did so incorrectly and (2) that Ms. Van Der Heiden was "abusive" toward C.N.. Because the corpus of the facts are the same, these claims subject to dismissal for the same reasons as those discussed under our analysis of the other purported Section 1983 claims.

or controversy." 28 U.S.C. § 1367, *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("The state and federal claims must derive from a common nucleus of operative fact."); *Rheuport v. Ferguson,* 819 F.2d 1459, 1467 n. 13 (8th Cir.1987)." *Boldthen v. Independent School Dist. No. 2397,* 865 F.Supp. 1330 (D.Minn.1994). The discretion to exercise supplemental jurisdiction over state law claims is within the sound discretion of the district court. *Id.* at 1340. Where federal claims are dismissed before trial, the court should dismiss the state court claims. *Id.(citations omitted)* Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction. *Id.*

In this case, the claims all stem from the same set of allegations – that Ms. Van Der Heiden violated the IEP by using restraint and seclusion too frequently or that she was "abusive" toward C.N. As a result, dismissal of the claims that this Court had original jurisdiction over should result in the state claims dismissal as well.

**B. Assault and Battery**

An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect." *Dahlin v. Fraser,* 288 N.W. 851, 852 (Minn.1939). "Battery is an intentional, unpermitted offensive contact with another." *Johnson v. Morris,* 453 N.W.2d 31, 40 (Minn.1990); *see Essex Ins. Co. v. Davidson,* 248 F.3d 716, 718 (8th Cir.2001). Plaintiffs assert that "some time" within a three year period Ms. Van Der Heiden choked C.N., pulled her hair and committed other acts against her. Ms. Van Der Heiden adamantly denies these allegations. Plaintiffs provide no facts whatsoever that make such claims plausible. Plaintiffs allege "on information and belief" that C.N. was also verbally assaulted by Ms. Van Der Heiden but again, they provide no facts supporting this allegation. No date, no time, no witnesses, no place and no accusation of what was said. Plaintiffs' acknowledge that their claims are not sufficiently pled to withstand a motion to dismiss when they qualify their mere assertions with "on information and belief". Their Complaint must be dismissed pursuant to Rule 12(b)(6).

**C. Intentional Infliction of Emotional Distress**

The Minnesota Supreme Court has held that there are four elements to claim of intentional infliction of emotional distress. *Larson,* 2004 WL 432218 at 19. The conduct

17

was extreme and outrageous; it was intentional or reckless; the conduct caused emotional distress and that distress was severe. *Id. citing Kelly v. City of Minneapolis,* 598 N.W. 2d 657, 663 (Minn. 1999).   Plaintiffs have not pled facts sufficient to withstand a Rule 12(b)(6) motion. Instead they have used conclusions and a recitation of the elements of the cause of action.

## VII. Ms. Van Der Heiden is Immune from Suit
### A. Official Immunity

Ms. Van Der Heiden is entitled to official immunity from the state law claims. "Under Minnesota law, public officials are automatically entitled to official immunity from state law claims when their duties require the exercise of discretion, so long as the officials are not guilty of a willful or malicious wrong." *Larson,* 2004 WL 432218 at 19 (citations omitted).

To determine whether official immunity is available, requires a determination of whether the acts were discretionary or ministerial and whether the alleged acts were malicious or willful. *Id.* at 19.  Malice in this context means intentionally committing an act that the official believes is illegal. *Id.* To overcome a defense of official immunity, plaintiff may not rely on "bare allegations of malice" but must present specific facts evidencing malice. *Id.* Plaintiffs have not done so and Defendant Van Der Heiden is entitled to official immunity regarding the state law claims.

### B. Qualified Immunity

Defendant Van Der Heiden is also entitled to dismissal as a matter of law based qualified immunity. Qualified immunity provides protection from civil liability to government agents who perform discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. *See Anderson v. Creighton,* 483 U.S. 635, 638 (1987). Qualified immunity is a question of law for the court that should be decided early so as to shield appropriate officials from suit. *Gainor v. Rogers,* 973 F.2d 1379, 1382-83 (8th Cir.1992). The court applies the doctrine of qualified immunity in a manner that " gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff,* 414 F.3d 989, 992 (8th Cir.2005) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)).

In evaluating a claim of qualified immunity, the initial inquiry is whether the facts show a violation of a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Craighead v. Lee,* 399 F.3d 954, 961 (8th Cir.2005); *Bradley v. Arkansas Dept. of Educ.,* 301 F.3d 952, 955 (8th Cir. 2002). If the court determines that the facts, construed in the light most favorable to the nonmoving party, do not establish a violation of a constitutional right, no further inquiry is necessary. *Saucier,* 533 U.S. at 201. If the facts establish a constitutional violation, the court must then determine whether the right was "clearly established" at the time of the violation. *Id.* A right is "clearly established" if the contours of that right are " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Wilson v. Layne,* 526 U.S. 603, 614-15 (1999) (quoting *Anderson,* 483 U.S. at 640). In other words, in light of pre-existing law, "the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640. The dispositive inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 201.

Clearly in this case, Ms. Van Der Heiden is entitled to qualified immunity for the Section 1983 claims that are premised under IDEA and Section 504 as discussed above. She is also entitled to qualified immunity on the allegations of constitutional violations where they all stem from the use of seclusion or restraint in the classroom because this use was not unlawful. Instead, Ms. Van Der Heiden was using educational methods that were within a range of acceptable professional choices. Moreover, Plaintiffs have not shown that the choice to use different educational methods was a "substantial departure" from the standards for educational professionals. In fact, plaintiffs have provided no facts upon which the Court may determine there is a plausible argument that C.N.'s rights were violated. The use of a particular method of behavioral intervention does not support claims of due process or equal protection violations.

Again, C.N. is likely to argue that her claims that Ms. Van Der Heiden was "abusive" toward her take her claims outside of those for which Ms. Van Der Heiden is immune under the doctrines of qualified or official immunity. However, to sustain such claims on a motion to dismiss, Plaintiff must provide some facts that support a plausible theory in this regard and they have not done so. Merely asserting on information and belief that conduct may have occurred is insufficient to withstand a motion to dismiss.

## CONCLUSION

Ms. Van Der Heiden respectfully requests that this Court find that all of Plaintiffs' claims fail to state a claim upon which relief may be granted for the reasons argued above.

Dated: May 5, 2008             s/Laura Tubbs Booth
                               Laura Tubbs Booth
                               Attorney Registration No. 186910
                               Booth Law, LLC
                               1820 Xenium Lane N.
                               Plymouth, MN 55441
                               (763)550-7194
                               *Attorneys for Defendant Van Der Heiden*