UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 07-4774(DSD/JJG)


C.N., on her own behalf and
by and through her Parent and
Natural Guardian J.N.,

            Plaintiff,

v.                                              **ORDER**

Willmar Public Schools, ISD
No. 347, Michael Carlson, Chair,
Willmar Board of Education, in
his representative capacity,
Kathryn Leedom, Superintendent in
her personal and representative
capacities, Susan Smith, Supervisor
of Special Education, in her personal
and representative capacities,
Rebecca Simenson, Principal, in her
personal and representative
capacities, and Lisa Vander Heiden,
in her personal and representative
capacities,

            Defendants.


     Margaret O'Sullivan Kane, Esq., Kane Education Law, 1654
     Grand Avenue, Suite 200, St. Paul, MN 55105, counsel for
     plaintiff.

     Nancy E. Blumstein, Esq., Sonya J. Guggemos, Esq. and
     Ratwik, Roszak & Maloney, 730 Second Avenue South, Suite
     300, Minneapolis, MN 55402 and Laura T. Booth, Esq.,
     Booth Law, 1820 Xenium Lane North, Plymouth, MN 55441,
     counsel for defendants.


     This matter is before the court upon defendants' motions to

dismiss.  Based on a review of the file and record, the proceedings

herein, and for the following reasons, the court grants defendants'

motions.

**BACKGROUND**

This action arises from plaintiff C.N.'s tenure at Lincoln Elementary School ("Lincoln") in Willmar, Minnesota. Born on March 10, 1998, C.N. underwent testing at the University of Minnesota's Neuropsychology Clinic in September 2001 to determine whether she experienced Autism Spectrum Disorder ("ASD"). Tests revealed that C.N. did not suffer from ASD but exhibited a communications disorder and attentional and hyperactivity issues. At a later pre-kindergarten assessment in 2003, C.N. was designated as developmentally delayed with speech and language impairment.

C.N. began school at Jefferson Kindergarten in fall 2003 with a special education individualized education program ("IEP") created collaboratively by the local education agency, parents, teachers and behavioral service providers (the "IEP team"). The behavior intervention plan ("BIP") included in C.N.'s IEP permitted controlled procedures - such as restraint positions and seclusion - when necessary. After several months of behavioral problems and disruptions, Jefferson staff, officials from defendant Willmar Public Schools, Independent School District No. 347 (the "District"), and C.N.'s mother, J.N., decided to reevaluate C.N. Outside evaluator Tim Ardoff ("Ardoff") from Southern Minnesota Community Support Services conducted the functional behavioral assessment of C.N. Based on Ardoff's findings, the District transferred C.N. to Lincoln - another school within the Willmar

system.   The IEP team also revised C.N.'s IEP and BIP based, in part, on Ardoff's suggestions.   Over J.N.'s alleged objections, the BIP continued to allow for restraints and seclusion.   (Compl. ¶¶ 37-38.)   The IEP team revised C.N.'s IEP annually, adjusting its focus to language development but retaining a BIP that included seclusion and restraint procedures to be employed when C.N. was a danger to herself or others.

During her first through third grade years at Lincoln, C.N. worked with defendant Lisa Van Der Heiden ("Van Der Heiden"), one of the school's special education teachers.   Although C.N. spent time in mainstream classroom settings, Van Der Heiden worked with her on mathematics, on reading and during times when behavioral challenges arose.   When C.N.'s behavior became problematic, Van Der Heiden used the seclusion and restraint methods set forth in the BIP.   Van Der Heiden documented the use of such techniques in daily behavioral and communications logs, which she kept for every child in her care.

Plaintiffs maintain that Van Der Heiden improperly and overzealously used seclusion and restraint techniques on C.N. Specifically, based on their own beliefs, the behavioral logs and reports from classroom paraprofessionals, plaintiffs allege that while instructing C.N., Van Der Heiden:

• developed a "thinking desk" for C.N., in which she required C.N. to hold a physical posture for in excess of thirty minutes or else face restraint;

- shouted and yelled at C.N.;

- pulled C.N.'s hair;

- made sarcastic remarks to C.N. and belittled her; and

- on one occasion, denied C.N. the use of bathroom facilities, resulting in an accident.  (Compl. ¶¶ 44, 48, 63-66.)

Based on reports from the classroom paraprofessionals, the Minnesota Department of Education ("MDE") conducted an investigation of Van Der Heiden in August 2006.  After an eight-month inquiry, the MDE concluded that Van Der Heiden engaged in maltreatment of C.N. by denying her access to the restroom.  (Id. ¶ 70.)  During the MDE investigation, the District placed Van Der Heiden on administrative leave and conducted its own review of her behavior.  The District's examination of Van Der Heiden - its third in two years - confirmed that she had denied bathroom access to C.N. but concluded that the incident was a lapse in judgment.  (Id. ¶¶ 75-79.)  Ultimately, the District dismissed the maltreatment allegations against Van Der Heiden.  She returned to Lincoln on October 2, 2006, but was placed on leave again on October 6, 2006, and had no further contact with C.N.  A month later, J.N. withdrew C.N. from Lincoln and enrolled her at St. John's Catholic School in Atwater, Minnesota, where C.N. studied for the remainder of the third grade.  J.N. enrolled C.N. in the Atwater public school district for the 2007-2008 school year.

On October 17, 2007, plaintiffs requested a special education administrative hearing and filed a complaint with the MDE alleging

4

that the District denied C.N. a free appropriate public education ("FAPE") while she attended Lincoln.  The District moved to dismiss the complaint based upon lack of jurisdiction because C.N. was no longer a student in the District at the time of the action. Plaintiffs argued that a physical and psychological safety exception applied, but the Administrative Law Judge ("ALJ") dismissed plaintiff's claim for lack of jurisdiction on November 15, 2007.  Plaintiffs filed a notice of appeal with the MDE on November 19, 2007, but were denied "access to the administrative hearing system in the state of Minnesota."  (Compl. ¶ 4.)

Plaintiffs now appeal the ALJ's ruling and allege a host of additional federal and state law claims against Van Der Heiden, the District, and defendants Lincoln principal Rebecca Simenson ("Simenson"), District board of education chairperson Michael Carlson ("Carlson"), District superintendent Kathryn Leedom ("Leedom") and District supervisor for special education programming Susan Smith ("Smith") in their respective individual and official capacities.  Plaintiffs claim that defendants violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; Section 504 of the Rehabilitation Act ("Section 504"), 20 U.S.C. § 794; the due process and equal protection clauses of the Fourteenth Amendment; the right against unreasonable seizures guaranteed by the Fourth Amendment; 42 U.S.C. § 1983; the Minnesota Human Rights Act ("MHRA"), Minn. Stat. Ch. 363A; and the

Minnesota Government Data Practices Act ("MGDPA").   Plaintiffs further assert state law tort claims of assault and battery, intentional infliction of emotional distress, unreasonable seizure, false imprisonment, negligent confinement, breach of fiduciary duty and negligence.   Defendants move to dismiss all claims except plaintiffs' appeal of the administrative dismissal of their due process hearing.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This statement does not require detailed factual allegations so long as it "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  However, a court will dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted if, after taking all facts alleged in the complaint as true, those facts fail "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

## I.   Individuals With Disabilities Education Act

Congress enacted the IDEA to ensure that all children with disabilities have access to a free appropriate public education.

20 U.S.C. § 1400(d).   The IDEA seeks to accomplish this objective through a complex statutory framework that grants substantive and procedural rights to children and their parents.   See Winkleman v. Parma City Sch. Dist., 127 S. Ct. 1994, 1999-2005 (2007).

### A.    Individual Defendants

As an initial matter, the court addresses plaintiffs' IDEA claims against defendants Van Der Heiden, Carlson, Leedom, Smith and Simenson in their individual and official capacities.   An official capacity suit is "in all respects other than name, to be treated as a suit against the entity" - in this case, the District. Kentucky v. Graham, 473 U.S. 159, 165 (1985).   Because plaintiffs have already included the District as a defendant, plaintiffs' IDEA claims against the individual defendants are redundant.   As to defendants' individual capacities, the IDEA does not authorize recovery of damages against teachers or education officials.   See Bradley v. Ark. Dept. of Educ., 301 F.3d 952, 957 n.6 (8th Cir. 2002); Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996). Instead, the IDEA only allows damages, where appropriate, from the school district in question.   See id.; 20 U.S.C. § 1401(8)(A).   For these reasons, the court dismisses plaintiffs' IDEA claims against defendants Van Der Heiden, Carlson, Leedom, Smith and Simenson.

### B.    The District

To promote parental involvement in all matters concerning the child's educational program, the IDEA allows parents to obtain

administrative and judicial review of decisions they deem
unsatisfactory or inappropriate. See Honig v. Doe, 484 U.S. 305,
311-12 (1988). Thus, if parents are dissatisfied with a child's
IEP, they may request a due process hearing. 20 U.S.C. § 1415(f).
Under the Minnesota implementing statute for the IDEA, this due
process hearing "must be held in the district responsible for
ensuring that a free appropriate public education is provided
according to state and federal law." Minn. Stat. § 125A.091,
subdiv. 12. If a student changes school districts and does not
request a due process hearing, "his or her right to challenge prior
educational services is not preserved." Thompson ex rel. Buckhanon
v. Bd. of Special Sch. Dist. No. 1, 144 F.3d 574, 579 (8th Cir.
1998). Subsequent challenges to the student's previous education
"become moot because the new school district is responsible for
providing a due process hearing." Id.

In this case, plaintiffs failed to initiate a due process
hearing while C.N. was enrolled at Lincoln. Instead, they waited
over a year after C.N. left Lincoln to assert IDEA claims against
defendants. By then, C.N. had attended both private and public
schools in Atwater, and plaintiffs had moved to the Atwater public
school district. Because the District was no longer responsible
for providing a FAPE to C.N. at the time of the hearing,
plaintiffs' IDEA claim fails as a matter of law. See M.P., 326
F.3d at 980; Thompson, 144 F.3d at 578-79; see also M.M. ex rel.

L.R. v. Special Sch. Dist. No. 1, 512 F.3d 455, 460 (8th Cir. 2008). Accordingly, the court grants the District's motion to dismiss that claim.

## II. Rehabilitation Act

Section 504 is "a proscriptive, anti-discrimination statute that prohibits discrimination on the part of governmental actors to avoid due process and equal protection violations." M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, 439 F.3d 865, 867 (8th Cir. 2006). To establish a prime facie case of disability discrimination under Section 504, a plaintiff must prove that she: "(1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability." Timothy H. v. Cedar Rapids Cmty. Sch. Dist., 178 F.3d 968, 971 (8th Cir. 1999). A plaintiff must show bad faith or gross misjudgment to make a successful Section 504 violation claim. See Birmingham v. Omaha Sch. Dist., 220 F.3d 850, 856 (8th Cir. 2000); Monahan v. Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982). Allegations of negligence do not "clear the hurdle set by the explicit language of section 504." Sellers v. Sch. Bd., 141 F.3d 524, 529 (4th Cir. 1998) (holding Section 504 claim was properly dismissed where complaint alleged failure to timely assess and diagnose a student's disability), cert. denied, 525 U.S. 871 (1998).

### A.   Individual Defendants

Plaintiffs assert Section 504 claims against defendants Van Der Heiden, Carlson, Leedom, Smith and Simenson in their individual and official capacities.  As with the IDEA claims, the Section 504 claims against these defendants in their official capacities are redundant to the claims against the District and are therefore dismissed.  See Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998).  Further, Section 504, like the IDEA, does not authorize claims against school officials in their individual capacities.  See Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999), cert. dismissed, 529 U.S. 1001 (2000); R.P. ex rel. K.P. v. Springdale Sch. Dist., No. 06-5014, 2007 WL 552117, at *5 (W.D. Ark. Feb. 21, 2007).  Accordingly, the court dismisses all Section 504 claims against defendants Van Der Heiden, Carlson, Leedom, Smith and Simenson.

### B.   The District

The "pertinent obligation of [a school district] under Section 504 is the same as its obligation under the IDEA: 'To provide disabled students with a free appropriate public education.'"  Fick ex rel. Fick v. Sioux Falls Sch. Dist. No. 49-5, 337 F.3d 968, 970 (8th Cir. 2003) (citing Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1034 (8th Cir. 2000)).  Where a plaintiff's IDEA claim fails

for lack of jurisdiction, the court may still consider a Section 504 claim if it is "wholly unrelated" to the IEP process.  <u>M.P.</u>, 439 F.3d at 868.

In this case, plaintiffs have not alleged a "wholly unrelated" Section 504 claim.  Plaintiffs assert that defendants failed to "identify, evaluate, and provide [C.N.] with a free appropriate public education and ... physically and verbally abus[ed] her ... by using restraints and seclusion punitively without the Plaintiffs' consent."  (Compl. ¶ 88.)  Such allegations are intertwined with plaintiffs' IDEA claim and the IEP process. Indeed, plaintiffs' Section 504 claim does little more than rehash their IDEA claim.  Accordingly, it also fails as a matter of law.  See <u>Moubry ex rel. Moubry v. Indep. Sch. Dist. No. 696 (Ely)</u>, 951 F. Supp. 867, 888 (D. Minn. 1996) (IDEA's exhaustion requirement precludes litigants from circumventing procedural requirements by bringing a related claim under a different federal statute); <u>cf.</u> <u>M.P.</u>, 439 F.3d at 868 (allowing Section 504 claim to proceed despite IDEA dismissal because plaintiff alleged District's failure to protect him from student-initiated disability-based harassment).

## III.  42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under the color of any
> statute, ordinance, regulation, custom, or
> usage, of any State ... subjects, or causes to
> be subjected, any citizen of the United States

11

> ... to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law.

Section 1983 is "'not itself a source of substantive rights,'" but merely affords "'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). The first task for a court considering a § 1983 claim is to identify the specific constitutional right allegedly infringed. See id. at 271.[1]

**A.   The District**

A municipality may only be liable under § 1983 if a plaintiff establishes the deprivation of a constitutional or federal statutory right as a result of the municipality's official custom or policy. See Monell v. City of N.Y. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978). Likewise, a municipality may not be held vicariously liable for the unconstitutional acts of its employees unless it can be shown that the personnel was acting to implement on official municipality custom or policy. See id.; Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999); Wedemeier v. City of Ballwin, Mo., 931 F.2d 24, 26 (8th Cir. 1991). Plaintiffs have

---

[1] Plaintiffs assert § 1983 claims against defendants for violations of rights secured by the Fourth and Fourteenth Amendments, the IDEA and Section 504. Alleged violations of the IDEA and Section 504, however, may not serve as the basis of a § 1983 action. See Heidemann, 84 F.3d at 1033 (IDEA); Alsbrook, 184 F.3d at 1010-11 (Section 504). The court therefore dismisses these claims.

12

failed to identify any District custom or policy that defendant school officials relied upon in allegedly violating C.N.'s rights. Accordingly, the court dismisses plaintiffs' § 1983 claims against the District.

### B.   Individual Defendants

The remaining defendants argue that they are entitled to qualified immunity from plaintiffs' § 1983 claims.  Public officials performing discretionary functions are shielded from liability for civil damages under 42 U.S.C. § 1983 to the extent their conduct does not violate "clearly established statutory or constitutional rights" of which a "reasonable person" would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether qualified immunity applies, the court considers the "objective legal reasonableness" of an official's conduct in light of the information he or she possessed at the time of the alleged violation.  See Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001). An official will be immune if it is objectively obvious that a reasonably competent official could have concluded that the disputed action was proper.  See Malley v. Briggs, 457 U.S. 335, 341 (1986).

The applicability of qualified immunity is a question of law analyzed in two parts.  Saucier v. Katz, 533 U.S. 194, 201 (2001). The court first determines whether the facts alleged are adequate

to show a constitutional violation, and, if so, whether the law regarding the right allegedly violated was clearly established. See id.; Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666-67 (8th Cir. 1992).   If a plaintiff has failed to establish a violation of a constitutional right, no additional inquiry is necessary, and the official is entitled to qualified immunity.   Saucier, 533 U.S. at 201.

### 1.   Fourth Amendment

The Fourth Amendment protects an individual's right to be free from "unreasonable searches and seizures."   U.S. Const. amend. IV. To sustain a successful § 1983 action based on a Fourth Amendment violation, a plaintiff must show that a seizure occurred and that it was unreasonable.   See Hawkins v. City of Farmington, 189 F.3d 695, 702 (8th Cir. 1999).    Fourth Amendment protections are applicable in public schools, New Jersey v. T.L.O., 469 U.S. 325, 336-37 (1985), although the setting and purpose of actions undertaken outside a typical law enforcement context profoundly affect their reasonableness, Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988).    Specifically, a court measures the reasonableness of a seizure based on the totality of the circumstances.   See McCoy v. City of Monticello, 342 F.3d 842, 846 (8th Cir. 2003).

In this case, plaintiffs argue that Van Der Heiden seized C.N. by employing restraint techniques, a "thinking desk," and a

14

seclusion room and that defendant school officials failed to stop such seizures.  Defendants maintain that such procedures are not seizures because they were used as educational techniques consented to as part of C.N.'s IEP.  The court need not decide the issue, however, because such actions, if seizures, were reasonable.

Where an authorized professional's treatment of a disabled individual "is not a *substantial departure* from accepted professional judgment, practice, or standards," her actions are reasonable.  See Heidemann, 84 F.3d at 1030 (qualified immunity proper for substantive due process claim against defendant who recommended use of blanket restraint on disabled student).  C.N.'s IEP - developed by educational specialists in conjunction with J.N. and approved of annually by J.N. - detailed educational and behavioral methods for C.N.'s teachers and set the standard for accepted practice.  As noted, the IEP allowed the use of restraint holds and seclusion.  Van Der Heiden, therefore, was not substantially departing from accepted professional judgment when she used such methods on C.N.  See Couture v. Bd. of Educ. of Albuquerque Pub. Schs., - F.3d - , No. 07-2133, 2008 WL 3092955, at *5-11 (10th Cir. Aug. 7, 2008) (granting qualified immunity on fourth amendment seizure claim when IEP called for timeouts and seclusion).  Indeed, Van Der Heiden was required to follow the IEP and use these techniques to help manage C.N.'s behavior.  See Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1027 n.3 (8th Cir.

2003) (IDEA violation when school fails to follow essential IEP elements); see also Couture, 2007 WL 3092955, at *7 ("If we do not allow teachers to rely on a plan specifically approved by the student's parents and which they are statutorily required to follow, we will put teachers in an impossible position - exposed to litigation no matter what they do."). Accordingly, plaintiffs have not set forth facts establishing a cognizable Fourth Amendment violation, and the individual defendants are entitled to qualified immunity on this claim.[2]

### 2.   Fourteenth Amendment

The Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

### a.   Equal Protection

To state an equal protection claim, a plaintiff must establish that she was treated differently than others similarly situated to her.  See Johnson v. City of Minneapolis, 152 F.3d 859, 862 (8th Cir. 1998).  Plaintiffs allege that no "non-disabled student who

---

[2] Having determined that Van Der Heiden's actions did not violate the Fourth Amendment, the court finds that defendants Carlson, Leedom, Smith and Simenson are equally without fault. Even if the court found Van Der Heiden's behavior unreasonable, though, the remaining individual defendants would be entitled to qualified immunity because plaintiffs have failed to identify how Carlson, Leedom, Smith and Simenson "seized" C.N., were deliberately indifferent to J.N.'s concerns or substantially departed from accepted professional judgment.

attended in the District was subjected to ... unreasonable and punitive seizures, restraint and seclusion of their persons." (Compl. ¶ 95.)  The court has already determined, however, that the alleged restraint techniques and seclusion C.N. experienced were reasonable.  Moreover, aside from the bare assertion of disparate treatment, plaintiffs have offered no facts by which to compare C.N.'s treatment with that of other disabled and nondisabled students at Lincoln or in the District.  See DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist., 126 F.3d 1102, 1107 (8th Cir. 1997); S.A.S. ex rel. W.S. v. Hibbing Pub. Schs., No. 04-3204, 2005 WL 2230415, at *5 (D. Minn. Sept. 13, 2005).  Accordingly, plaintiffs have not alleged a right to relief above the speculative level, and defendants are entitled to qualified immunity on that claim.

### b.   Due Process

The Fourteenth Amendment guarantees substantive due process that prevents the government from participating in conduct that either shocks the conscience or interferes with the rights consistent with liberty.[3]  See Singleton v. Cecil, 176 F.3d 419,

---

[3] Plaintiffs refer to a procedural due process claim in both their Complaint, (Compl. ¶ 100), and responsive memorandum, (Pls.' Resp. at 18), but provide no facts or analysis in either to support that claim.  Accordingly, the court addresses only the substantive due process claim.

424 n.7 (8th Cir. 1999).   Substantive due process protects against arbitrary and oppressive government conduct.   See County of Sacramento v. Lewis, 523 U.S. 833, 847-53 (1998).

Plaintiffs contend that defendants violated C.N.'s right to substantive due process by denying her a FAPE and engaging in behavior that "shocks the conscience of reasonable persons and is intolerable in a civilized society." (Compl. ¶¶ 100, 97.)   Again, however, plaintiffs make a bald accusation without linking specific facts to their claim.   Moreover, having already determined that allegations related to provision of C.N.'s FAPE are procedurally barred and that defendants' behavior was reasonable, the court cannot find that defendants' alleged conduct violated plaintiffs' substantive due process rights.   See generally Graham v. Connor, 490 U.S. 386, 395 (1989) (claims of seizure should be analyzed under Fourth Amendment reasonableness standard and not the "more generalized notion" of substantive due process).   Qualified immunity is therefore warranted on this claim.

## IV.   Minnesota State Law Claims

Plaintiffs assert state law violations of the MHRA and MGDPA as well as tort claims of assault and battery, intentional infliction of emotional distress, unreasonable seizure, false imprisonment, negligent confinement, breach of fiduciary duty and negligence.   Title 28, United States Code, Section 1367(a) permits a district court to exercise supplemental jurisdiction over state

law claims that are part of the same case or controversy as the claims that fall within the court's original jurisdiction.  A court may in its discretion, however, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed.  28 U.S.C. § 1367(c)(3); Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006).  Indeed, if "the federal claims are dismissed before trial ... the state claims should be dismissed as well."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1996).  The court thus declines to exercise its supplemental jurisdiction over plaintiffs' remaining state-law claims and dismisses them without prejudice.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendants' motions to dismiss [Doc. Nos. 12, 17] are granted;

2.   Plaintiffs' IDEA, Section 504, § 1983, and constitutional claims are dismissed with prejudice; and

3.   Plaintiffs' state law claims are dismissed without prejudice.

Dated:  August 19, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court

19